### In re John Rusin

[643 A.2d 1209]

No. 93-325

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 10, 1994

*William H. Meub* and *Sarah R. Gray* of *Keyser, Crowley, Meub, Layden, Kulig & Sullivan, P.C.*, Rutland, for Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *John W. Kessler*, Assistant Attorney General, Montpelier, for Amicus Curiae State.

**Allen, C.J.** Petitioner John Rusin appeals a decision of the State Environmental Board that the jurisdiction of Act 250, 10 V.S.A. §§ 6001–6092, continues to apply to his construction project in the Town of Manchester. We affirm.

On May 12, 1989, the District #8 Environmental Commission issued petitioner a land-use permit, authorizing the creation of a housing development in Manchester. The approved plan called for the division of an 8.9 acre rectangular plot of land into four lots, approximately equal in size and roughly rectangular in shape. The lots were laid out side by side and labelled, from east to west, lots one, two, three and four. Act 250 jurisdiction was based on the so-called "road rule," which applies to land involved in the construction of roads exceeding 800 feet and intended to provide access to a parcel of more than one acre. The original plan called for a 740-foot access road 25 feet wide, ending in a cul-de-sac on the northern edge of the subdivision at the border of lots one and two. From the cul-de-sac, two roads were drawn to provide access to the four lots. The first was a 100-foot spur leading south into lots one and two; the second was a 480-foot branch providing access to lots three and four, running west along the subdivision's northern border adjacent to lots two and three, and ending at the eastern border of lot four.

The permit was amended in March 1990 to authorize the construction of two ponds. The lots were cleared, the ponds constructed, and the roadways built. The 740-foot portion was built as planned, but the spur serving lots one and two was constructed to 56 feet instead of 100 feet. The 480-foot roadway leading from the cul-de-sac to lot four was reduced in width, but otherwise built as planned. Petitioner narrowed this roadway because he intended to combine lots two and three, and needed access only to lot four, where he constructed his personal residence. Thus, a total of 796 feet of roadway provides access to more than one lot: lot one and the lot created from the combination of lots two and three. The 480-foot section originally intended to serve lots three and four provides access to lot four only.

In February 1992, the permit was amended again to add conditions for maintaining a buffer strip on either side of a stream flowing through the property. Sometime in April 1992, petitioner requested an amendment to his wastewater permit from the Agency of Natural Resources (ANR), based on the consolidation of lots two and three into a single building lot. ANR issued an amended permit on May 5, 1992, authorizing the elimination of lot three.

Petitioner then requested a ruling from District Commission #8 that he had abandoned his land-use permit, thereby releasing the land from Act 250 jurisdiction. After a public hearing, the Commission denied petitioner's request in a memorandum of decision dated August 6, 1992. Pursuant to 10 V.S.A. § 6089(a), petitioner appealed

for de novo review before the Environmental Board, which held a public hearing on December 16, 1992. The Town of Manchester Planning Commission and petitioner appeared as parties at the hearing. On June 10, 1993, the Board issued findings of fact, conclusions of law and an order that Act 250 jurisdiction continued for the project. Petitioner appeals the Board's decision, and the State of Vermont has appeared as amicus curiae.

Petitioner offers two theories to support his contention that Act 250 jurisdiction does not extend to the now three-lot project. According to the first, jurisdiction cannot continue because the modified project now slated for completion would not have been subject to Act 250 jurisdiction had it been proposed that way originally. Under the second, jurisdiction has ceased because petitioner abandoned the permit through nonuse, as described in 10 V.S.A. § 6091(b).

## I.

 Our review of the Board's decision is circumscribed both by statute and by traditional principles of administrative law. The Board's findings of fact are conclusive if grounded in substantial evidence, 10 V.S.A. § 6089(c), "which is evidence properly before the Board that is relevant and which a reasonable person might accept as adequate to support a conclusion." *In re Denio*, 158 Vt. 230, 236, 608 A.2d 1166, 1170 (1992). Absent compelling indication of error, the Board's interpretation of Act 250 and its own duly promulgated rules must control. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992). We also will affirm the Board's conclusions of law, provided they are derived from a correct interpretation of the law and findings of fact based on substantial evidence. *Id.* We note, too, that "[i]n numerous cases, we have recognized the specialized expertise of the Board in determining whether it has jurisdiction over a particular development proposal." *Denio*, 158 Vt. at 235, 608 A.2d at 1169.

In this case, the Board ruled that petitioner's project remained subject to Act 250 jurisdiction despite departures from the original plan. There is no dispute that jurisdiction over the development was predicated on Environmental Board Rule 2(A)(6), known as the "road rule." Under the road rule, Act 250 jurisdiction extends to

> [t]he construction of improvements for a road or roads, incidental to the sale or lease of land, to provide access to or within a tract of land of more than one acre owned or controlled by a person. . . . For the purpose of determining jurisdiction, any

parcel of land which will be provided access by the road is land involved in the construction of the road. *This jurisdiction shall not apply unless the road is to provide access to more than five parcels or is to be more than 800 feet in length.* For the purpose of determining the length of a road, the length of all other roads within the tract of land constructed within any continuous period of ten years commencing after [March 1982] shall be included.

Envtl. Bd. R. 2(A)(6) (emphasis added). Petitioner asserts that the road rule no longer applies, because only 796 feet of "road" was actually built. The remainder of the roadways, each of which serves only one lot, petitioner characterizes as driveways not subject to the road rule. He argues that his project, as constructed, would never have been subject to Act 250 permitting requirements, and that continued jurisdiction unduly curtails the free and unregulated use of his land.

■ The term "road" is not defined by rule or statute. The Board concluded that petitioner "applied for and obtained a permit to construct a 1,100 foot road and create four lots. [Petitioner] commenced construction on this project, and appeared to have constructed what was proposed and permitted, with the exception of the elimination of one lot." In doing so, the Board interpreted the road rule to cover the 480-foot length of roadway leading from the cul-de-sac to lot four, which brought the total road length over the jurisdictional threshold. Absent compelling indication of error, we must accept this interpretation of the road rule by the Board, the administrative agency responsible for implementation of Act 250 administrative regulations. See *Rogers v. Watson,* 156 Vt. 483, 489, 594 A.2d 409, 412 (1991); *In re Vitale,* 151 Vt. 580, 582–83, 563 A.2d 613, 615 (1989), and cases cited therein; see also *In re Spencer,* 152 Vt. 330, 336–37, 566 A.2d 959, 963 (1989) (road rule ratified by Legislature).

In this case, examination of the evidence and the Board's findings leads us to conclude that the Board's determination that jurisdiction continues under the road rule was not clearly erroneous. Petitioner concedes that the stretch of road leading to lot four, as originally planned, qualified as road for jurisdictional purposes. The road actually constructed varies only in width and in the fact that it serves one lot instead of two. Despite the adjustments to the plan originally permitted, there has been no change in the amount of land involved or the character of its intended use.

 This Court has often observed that Act 250 was not intended to reach all land-use changes within the state, or to interfere with local land-use decisions, except when substantial changes in land use implicate values of state concern. *In re Agency of Administration*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982). These values include protecting and conserving the lands and environment of the state and insuring that they are "devoted to uses which are not detrimental to the public welfare and interests." 1969, No. 250 (Adj. Sess.), § 1 (Act 250 legislative findings and declaration of intent). In establishing an 800-foot touchstone for road rule jurisdiction, the Board evidently meant to place only land involved in the construction of sizable roads—that is, significant development projects—under the aegis of Act 250. Petitioner's development remains a significant land-use project, and therefore it was reasonable to include the 480-foot roadway leading to lot four in the jurisdictional determination.

 Petitioner contends that a prior Board decision mandates that the 480-foot stretch be excluded from the jurisdictional calculus. In *In re Burns*, Envtl. Bd. Decl. Ruling #236, slip op. at 3 (Apr. 3, 1991), the Board ruled that a 216-foot roadway, used by only one of four lots in a subdivision, was a "driveway" that could not be counted as "road" for purposes of the road rule. In contrast to petitioner's case, in *Burns* the Board found that the development was never subject to Act 250 jurisdiction at any point in its existence. More importantly, *Burns* was based on an earlier declaratory ruling in which the Board had stated that "'*[o]rdinarily*, a driveway is a private way leading from a house to a street and incidental to the residential purpose.'" *Id.* (quoting *In re Petrie*, Envtl. Bd. Decl. Ruling #130, slip op. at 2 (Feb. 25, 1982)) (emphasis added). The outcome in *Burns* was not preordained by an inflexible definition of "road" or "driveway," and illustrates that a reasonable measure of discretion inheres in the determination of what qualifies as a road. We believe that the Board reasonably exercised its discretion in interpreting the road rule to cover petitioner's project as constructed.

## II.

Turning to petitioner's second purported basis for termination of Act 250 jurisdiction, we agree with the Board that petitioner did not abandon his land-use permit. According to 10 V.S.A. § 6091(b):

> Nonuse of a permit for a period of two years following the date of issuance shall constitute an abandonment of the project and

the permit shall be considered expired. For purposes of this section, for a permit to be considered "used," substantial construction must have commenced within the two-year period . . . .

■ Petitioner first contends that he never "used" his permit within the meaning of the statute because: (1) the project modifications brought the development outside of Act 250 jurisdiction under the road rule, and (2) any construction actually performed could have been done without a permit, or was not substantial enough to qualify as "use" under § 6091(b). As we have concluded that jurisdiction remains viable under the road rule, the first part of this argument fails. The second part of this "nonuse" theory also fails, for it runs counter to the plain language of the Act. Once jurisdiction is established, 10 V.S.A. § 6081(a) mandates a land-use permit before commencement of *any* construction on a development. The record shows that petitioner cleared the land, constructed the roadways and two ponds, and built his private residence after securing the permit and two amendments to it. According to § 6081(a), none of this work could have been done without the permit. The work was conducted under the authority of the permit, and therefore the permit was "used" within the meaning of § 6091(b).

■ The contention that the work fell below the requisite level of "substantial construction" also lacks merit. The original plans called for the construction of 1100 feet of roads, four residences and two ponds on what began as a wooded lot; petitioner cleared the lot and constructed the roads, ponds, and one house. The statute does not define "substantial construction," but we are guided by the definition of "substantial change" in Board Rule 2(G) as "any change in a development . . . which may result in significant impact with respect to [permitting criteria]." Envtl. Bd. R. 2(G). Just as substantial change involves significant impact, it makes sense to define substantial construction as construction significant in light of the project contemplated. Petitioner has taken significant steps to realize his project. Therefore, for purposes of § 6091(b) the permit has not been abandoned, and jurisdiction continues.

*Affirmed.*